# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARK DAVIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 07-cv-6015 |
| | ) | |
| B. O'CONNELL, STAR # 420 | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court is Defendant, police officer Brian O'Connell's ("O'Connell") motion for summary judgment [26]. For the reasons set forth below, Defendant's motion is granted.

## I. Procedural Background

Plaintiff, Mark Davis ("Davis") filed his complaint [1,6] on October 24, 2007, asserting a claim for relief under 42 U.S.C. § 1983. The complaint named both O'Connell and the Winnetka Police Department,[1] and the case initially was assigned to Judge Manning. The complaint alleges that O'Connell pulled over the car that Davis was driving despite the absence of probable cause. Davis's complaint further states that he "violated no traffic laws at the time of the stop"[2] and that O'Connell "unconstitutionally stopped [Davis], and detained him in violation of his constitutional rights." Compl. at 5-6. O'Connell's answer [21] states that he had probable cause

---

[1] On November 20, 2007, the complaint was dismissed with respect to Winnetka Police Department [5] because police departments are not properly suable entities under Section 1983. See also *Best v. City of Portland*, 554 F.3d 698, 698 n.* (7th Cir. 2009) ("[A] police department is not a suable entity under § 1983").

[2] Plaintiff's Statement of Additional Facts [61] now concedes that Plaintiff was driving without a valid driver's license when he was stopped. See Pl. SOAF ¶ 12.

to arrest plaintiff and submits that Davis is collaterally estopped from pursuing his Section 1983 action due to Davis's underlying convictions stemming from the stop.

## II. Facts

The Court takes the relevant facts primarily from the parties' respective Local Rule ("L.R.") 56.1 statements: Defendant's Statement of Facts ("Def. SOF") [32], Plaintiff's Response to Defendant's Statement of Facts ("Pl. Resp. Def. SOF") [59], Plaintiff's Statement of Additional Facts ("Pl. SOAF") [61], and Defendant's Response to Plaintiff's Statement of Additional Facts ("Pl. Resp. Def. SOAF") [63].[3]

Brian O'Connell is a Village of Winnetka police officer. At the time of the facts that gave rise to this dispute, O'Connell was serving as a school resource officer at New Trier High School. Def. SOF ¶¶ 2-3. On September 4, 2007, Deanna Sutter ("Sutter"), a staff member of the high school's music department, reported to O'Connell that two credit cards and forty dollars were missing from her purse. Def. SOF ¶¶ 10, 12, 15-16. Sutter learned that her credit cards had been used, and she passed along to O'Connell both (i) the information related to those purchases and (ii) her account numbers. Def. SOF ¶¶ 19-24.

---

[3] L.R. 56.1 requires that statements of fact contain allegations of material fact, and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. at 583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider the statement. See, *e.g.*, *Malec*, 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. See L.R. 56.1(a), (b)(3)(B); see also *Malec*, 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317).

O'Connell and Detective Karl Larson, also a member of the Winnetka Police Department, began to investigate. Def. SOF ¶¶ 7, 25. They went to two Jewel Food Stores in Evanston where they viewed security footage; O'Connell obtained and watched a VHS security tape from a third location.[4] Def. SOF ¶¶ 25-31. O'Connell also viewed surveillance video from New Trier High School. Def. SOF ¶¶ 32-33. All of the video tapes contained "the same individual, an African American male wearing a light-colored short sleeved shirt, light colored long pants, tinted glasses, a watch on his left wrist, and white gym shoes with dark soles." O'Connell Aff. at 19; Larson Aff. at 10.[5] One of the videos showed the individual exiting a white, four-door vehicle. Def. SOF ¶ 35.

The video was used to capture images of the individual, which were put into a police bulletin and sent to several local police departments, including the Evanston Police Department. Def. SOF ¶¶ 36-38. Evanston had received reports of incidents similar to the Sutter theft at several of its local schools. Def. SOF ¶ 39. A detective with the Evanston Police Department

---

[4] Plaintiff disputes whether O'Connell viewed the VHS tape from the third location, a food mart. However, the denial fails to cite supportive record evidence. The evidence to which Plaintiff cites states merely that O'Connell did not view the VHS tape *at* the food mart (O'Connell Dep. at 28), which is consistent with the record evidence stating that the VHS tape was supplied to Officer O'Connell and was viewed later (O'Connell Dep. at 43; O'Connell Aff. at 18).

[5] Plaintiff denies the fact statement that corresponds with the quoted affidavits (See Pl. Resp. Def. SOF ¶¶ 34), but the denial is improper for three reasons. First, Plaintiff agrees with subsequent fact statements which presuppose that the subject of all the videos was the same. Second, the record evidence that Plaintiff cites in disputing the fact statement is consistent with Defendant's and Larson's affidavits – which were sworn to prior to their depositions. During Detective Larson's deposition, the basis for Plaintiff's denial, Larson stated that the person in the video was "[m]ale, black, bald sunglasses. That's as much as I can describe off the top of my head." Larson Dep. at 13. This is consistent with, if less fulsome than, the other record evidence, but the testimony hardly undermines the fact statement. See Larson Aff. at ¶¶ 10, 30-31; O'Connell. Aff. at ¶ 19. Third, Defendant's summary judgment materials included a CD-R with surveillance footage, which Defendant represents was provided to Plaintiff (See [26] at 7 n.1; [27], Ex. A.). Plaintiff neither contests that he received the footage nor does he base his denial of Defendant's fact statement on the footage that was provided to him.

3

reported to Detective Larson on September 7, 2007, that he had spoken with several individuals and that the individual depicted in the images was the Plaintiff, Mark Davis. Def. SOF ¶¶ 43, 44.

Events moved fairly rapidly from there. Larson worked with the Evanston detective to obtain a prior arrest photo of Mark Davis and observed that the person in the video surveillance appeared to be Davis. Def. SOF ¶¶ 45-46. A look at prior arrest reports revealed that Davis had been driving a white 2005 Chrysler four-door with Illinois license plate number 979 0923 during an arrest earlier in 2007. Def. SOF ¶ 48. The report also indicated an address for Davis at an apartment building in Skokie, IL. *Id.* And a different report, this one obtained from the Illinois Secretary of State's office, showed that Davis had an expired driver's license. Def. SOF ¶¶ 49-50.

On September 13, 2007, Davis was arrested. After notifying the Skokie Police Department, O'Connell and Larson drove to the address in Skokie that was listed on one of Davis's arrest report. Def. SOF ¶ 48; [27], Ex. D-1; Pl. SOAF ¶ 6.[6] While there, O'Connell and Larson observed Davis enter a white four-door Chrysler Sebring with Illinois license plate number 979 0923. According to Detective Larson, when they observed Davis walk toward the car, "both Officer O'Connell and I recognized him as the spitting image of the subject in the video, and we were sure it was him." Larson Dep. at 34. Officer O'Connell likewise stated in his deposition that the person they observed "looked like the person in the video and the bulletin"[7] and "had the same physical description as from the arrest report of Mr. Davis."[8]

---

[6] They also drove to at least one other possible address for Davis in Evanston. See, *e.g.*, O'Connell Dep. at 40.

[7] Plaintiff's Statement of Additional Facts states that Officer O'Connell believed that the person he observed entering the vehicle was Mark Davis because he "*matched the description* of the person they observed in the video from Jewel." Pl. SOAF ¶ 8 (emphasis added). Defendant's response admits the truth of the statement but denies that this was the only basis for Officer O'Connell's belief. Def. Resp. Pl. SOAF ¶ 8.

4

O'Connell Dep. at 46. Davis drove away, was pulled over by O'Connell and Larson, and arrested after he failed to produce a valid driver's license. Def. SOF ¶¶ 53-54, 57-58. Prior to the traffic stop, Mr. Davis "violated no traffic laws other than driving with an expired license." Pl. SOAF ¶ 12. Davis was charged with driving without a valid driver's license and with unlawful use of a credit card. Def. SOF ¶¶ 60-63.

In October 2005, a grand jury indicted Davis with two counts of unlawful use of a credit card and two counts of forgery (for signing the credit card receipts, it seems). Def. SOF ¶ 65. As part of a plea deal, Defendant pleaded guilty to one count of unlawful use of a credit card, two counts of forgery, and one count of driving without a valid driver's license. Def. SOF ¶¶ 67-72; see also [28], Ex. N at 5-7. Davis was sentenced to three years in prison and one year of supervised release, and he received time served for the driver's license violation. Def. SOF ¶ 73; [28], Ex. N at 14.

### III. Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

The wording of Plaintiff's statement of additional fact, which was also used in eliciting deposition testimony, appears confusing because it could be read to imply that the officers based their identification of Davis based not on their viewings of the security video but based on the *description* of the video. Yet, Plaintiff has already admitted that the officers actually watched the surveillance videos and that, after viewing arrest photos of Davis, Detective Larson concluded that the subject of both the videos and the arrest photos "appeared to be the same." See Pl. Resp. Def. SOF ¶¶ 25-31, 33, 35, 46. Plaintiff does not seem to contend, therefore, that the description of Davis was the only or even primary basis that the officers had for concluding that the person entering the vehicle was Mark Davis. And in any event, as explained below, even had the officers based their initial stop on the description of Davis that they had, they still would have been justified in conducting a *Terry* stop and escalating that stop into a full-blown arrest.

[8] There were two arrest reports for Davis, together (and mostly harmoniously) describing Davis as a black male, age 40, 5'11," with either brown hair or bald, a medium complexion, a medium or large build, and a weight of 210 to 220 pounds. [27], Ex. D-1; *id.* at Ex. D-2.

5

matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, a "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**IV. Analysis**

    **A. The Probable Cause Standard**

Probable cause is an absolute defense for a police officer to a Section 1983 action for wrongful arrest. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect

6

has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The Supreme Court has explained that "[t]he rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests [of preventing unfounded charges and ensuring community protection]. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

In making the determination of whether probable cause existed at the time of an arrest, "the court steps into the shoes of a reasonable person in the position of the officer." *Wheeler*, 539 F.3d at 634. The inquiry centers on how the information that the police had "would have appeared to a reasonable person in the position of the arresting officer." *Id.* (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). That is, the inquiry is objective rather than subjective: "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citation omitted). In the context of violations of traffic laws, probable cause "exists when an officer reasonably believes that a driver committed a traffic offense." *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006). "Police can stop an automobile when they have probable cause to believe that the driver violated even a minor traffic law." *Id.*

If police have probable cause, they generally do not need an arrest warrant to make an arrest. Outside of a routine felony arrest occurring in a suspect's home, the general rule is well established that, so long as police have probable cause, a supporting warrant is not required to

make an arrest. *Smith v. Gomez*, 550 F.3d 613, 618 (7th Cir. 2008) (stating the general rule); *Russell v. Harms*, 397 F.3d 458, 466 (7th Cir. 2005) (discussing arrests in the home). Although it may often be the "better practice" for law enforcement to obtain a warrant, particularly where time is not of the essence, the police need not do so in the vast majority of cases. See, *e.g.*, *Forman v. Richmond Police Dept.*, 104 F.3d 950, 962 (7th Cir. 1997).

Of particular importance to the instant matter, "[p]robable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers." *Wheeler*, 539 F.3d at 634. The absolute defense applies even if the announced reasons for the arrest are "not 'closely related' to the offense stated by the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 155 (condemning the "closely related offense" rule that some courts had adopted). Determining whether probable cause existed is not always appropriate for judicial resolution on summary judgment: the determination "must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences drawn from them." *Wheeler*, 539 F.3d at 634 (internal quotation marks and citations omitted); see also *Booker v. Ward*, 94 F.3d 1052, 1058 (7th Cir. 1996). However, if the facts upon which the probable cause determination by police was made are undisputed, the Court may decide the issue. *Ward*, 94 F.3d at 1058; *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993).

**B.  Officer O'Connell Had Probable Cause to Stop, Detain, and Arrest Plaintiff**

On the undisputed facts, the Court concludes that Officer O'Connell had probable cause to arrest Plaintiff. Officer O'Connell and Detective Larson viewed several videos from the locations where Ms. Sutter's credit card had been used. Detective Larson was able to use the video to capture still photographs and send a bulletin to several police departments. Def. SOF ¶¶ 36-37. A detective from the Evanston Police Department informed Detective Larson that the

8

person in the Bulletin was Mark Davis. Def. SOF ¶ 44. And at that point Detective Larson procured a photograph and "observed that the individual depicted in the photograph appeared to be the same individual shown in the video." Def. SOF ¶ 46.

When Larson looked at prior arrest reports for Davis, he observed that Davis had been driving a white 2005 Chrysler four-door with Illinois license place 979 0923. Def. SOF ¶ 48. And Larson learned from the office of the Illinois Secretary of State that Mark Davis's driver's license had expired. Def. SOF ¶¶ 49-51. Larson and O'Connell then went to the vicinity of an apartment building that was listed as Davis's home address.[9] While at that address, Larson and O'Connell observed Davis enter a white Chrysler four-door vehicle and drive away. Def. SOF ¶ 53. Both Larson and O'Connell stated in their depositions that they recognized Davis. Plaintiff denies that the officers noted the plate number when Davis entered the vehicle. Pl. Resp. Def. SOF ¶ 53. And while the record does not make clear the point at which the officers noted that the license plate of the vehicle that Davis was driving matched the license plate of the vehicle in which Davis previously had been arrested, the officers already had plenty of corroborating information to support probable cause: specifically, Larson and O'Connell were at an address that had been listed on one of Davis's arrest reports, and observed a person they identified as Davis entering a white four-door automobile matching the description of the vehicle that the

---

[9] Plaintiff improperly disputes this statement of fact. Plaintiff's response disputes the statement inasmuch as it listed Plaintiff's proper address. See Pl. Resp. Def. SOF ¶ 48. Defendant's fact statement says that "Detective Larson observed that the April 11, 2007 [police] report indicated at the time of his arrest, Mark Davis was driving a white 2005 Chrysler four-door vehicle with Illinois license plate 979 0923, and gave his residence address 4845 Conrad, Apt. 2, Skokie, Illinois." Def. SOF ¶ 48. Defendant cites to the police report ([27], Ex. D-1) which indeed supports the fact statement. Plaintiff disputes the fact statement based on deposition testimony in which Larson testified that his "research" showed that Davis had another address in Evanston. Larson Dep. at 21-23. The record reveals that Davis had two listed addresses (See, *e.g.*, [27], Ex. D-2) and that Larson was aware of this (See, *e.g.*, Larson Dep. at 25).

9

officers were looking for.[10] See *United States v. Springs*, 17 F.3d 192, 194 (7th Cir. 1994) (police had probable cause to arrest based on an anonymous tip, evidence about a vehicle's model, "and, most importantly [a detective's] recognition of [the defendant's] face from * * * surveillance photographs"); *United States v. Holzman*, 871 F.2d 1496, 1503 n.2 (9th Cir. 1989) (officer identification based on surveillance video alone sufficient to furnish probable cause), abrogated on other grounds by *Horton v. California*, 496 U.S. 128 (1990). Based on the totality of the circumstances, Officer Larson and Detective O'Connell had probable cause to arrest Davis both for unlawful use of a credit card and for driving without a valid driver's license.

Even had the officers based their identification of Davis only from the "description of the person they observed in the [surveillance] video" (Pl. SOAF ¶ 8), that "description" included at a minimum that the subject was a black male between 30 and 40 years old with a goatee ([27, Ex. B]). The combination of the description, the similarity of the automobile to the one in the surveillance footage and prior arrest report, and the location of the automobile at a prior known address of Davis, also would have given the officers probable cause to arrest Davis. *Cf. United States v. Brown*, 366 F.3d 456, 459 (7th Cir. 2004) (police had probable cause to arrest bank robbery accomplice based on suspect's description even where principal's credibility was unknown to police); *United States v. Carpenter*, 342 F.3d 812, 815 (7th Cir. 2003) (probable cause to arrest based on height and weight descriptions of defendants where there was other circumstantial corroborating evidence of identity).

---

[10] Plaintiff does not dispute that the officers observed that the *description* of the vehicle jibed with Larson and O'Connell's observation of the video surveillance footage and with the prior arrest report. See Def. SOF ¶ 48; Larson Dep. at 28 (stating that as the officers drove passed Davis's Skokie address "we observed the white Sebring that * * * Davis had been driving previously"); O'Connell Dep. at 28, 42-44 (indicating that O'Connell and Larson were looking for the vehicle at Davis's addresses on the day that they arrested him).

And if nothing else, a mere description of Davis combined with the other information at hand furnished the officers with a sufficient, reasonably articulable suspicion to justify a brief investigatory stop under *Terry v. Ohio* (392 U.S. 1 (1968)) and its progeny. As part of that stop, the officers were entitled to ask for identification from Davis, which could have quickly dispelled any notion that the driver was either (i) Mark Davis and/or (ii) driving without a valid driver's license. See *Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County, et al.*, 542 U.S. 177 (2004) (request for identification is permissible when "reasonably related in scope to the circumstances which justified the stop") (citations omitted); *United States v. Sokolow*, 490 U.S. 1, 5, 11 (1989) (holding that a stop at an airport, during which the suspect was asked to produce identification and a plane ticket, was valid under *Terry*); *Hayes v. Florida*, 470 U.S. 811, 816-817 (1985) (even fingerprinting could be conducted during a *Terry* stop "if there [were] reasonable suspicion that the suspect [had] committed a criminal act, if there [were] a reasonable basis for believing that fingerprinting [would] establish or negate the suspect's connection with that crime, and if the procedure [were] carried out with dispatch."); *United States v. Riley*, 493 F.3d 803, 808-810 (7th Cir. 2007) (characterizing as a *Terry* stop a stop in which the suspect was asked to produce a driver's license); *United States v. Ornelas-Ledesma*, 16 F.3d 714, 716 (7th Cir. 1994) (same), vacated on other grounds by *Ornelas v. United States*, 517 U.S. 690, 699 (1996) (holding that, as a general matter, determinations of reasonable suspicion and probable cause should be reviewed by appellate courts *de novo*). When Davis failed to produce a valid driver's license in response to Larson's request, the officers would then have had probable cause to arrest Davis.

### C. Other Arguments

Defendant argues that he is entitled to summary judgment based on Davis's subsequent guilty plea to driving without a valid license, unlawful use of a credit card, and forgery. Because Davis was convicted in Illinois State Court, the preclusive effect of his guilty plea, if any, is determined with respect to Illinois preclusion law. *Reynolds v. Jamison*, 488 F.3d 756, 762-63 (7th Cir. 2007). The Illinois Supreme Court teaches that the application of collateral estoppel with respect to a guilty plea should be used "sparingly" and must be determined on a case-by-case basis "only when equity requires." *Talarico v. Dunlap*, 685 N.E.2d 325, 331-32 (Ill. 1997). One of the key factors used by Illinois courts is incentive to litigate. *Id.* at 332. Although Davis had presented a motion challenging the basis for the automobile stop, Davis's incentive to argue that motion (which was withdrawn) was surely reduced when the State offered Davis a plea deal. Among other things, that deal gave Mr. Davis time served for the charge of driving without a license. See [28], Ex. N at 2-3. And in any event, there is insufficient undisputed record evidence on the question of claim preclusion for the Court to determine what preclusive effects, if any, should attach to Davis's guilty plea.

Defendant also argues that he is entitled to qualified immunity for any constitutional violation. Yet, because the Court concludes that O'Connell did not commit any constitutional violations, the Court need not inquire further. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (where the allegations, if established, do not amount to a constitutional violation "there is no necessity for further inquiries concerning qualified immunity"); *Pearson v. Callahan*, 129 S.Ct. 808, 818, 821 (2009) (noting that the *Saucier* sequence is "often appropriate" although holding that courts may start and end their analyses by considering qualified immunity).

Plaintiff, on the other hand, argues that probable cause arguably was absent, and/or that Plaintiff's rights were violated, because Defendant made the arrest outside of his primary jurisdiction. It is true that a blatant disregard for jurisdiction may bear on the reasonableness determination with respect to an arrest. See *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 525-26 (7th Cir. 2001). However, an officer does not commit a *per se* constitutional violation even when the officer violates state law. See *id*. at 526 & n.3. More important, O'Connell and Larson were acting within their jurisdictional bounds. Illinois law allows officers to question and arrest subjects outside of their primary jurisdiction if the offense that they are investigating is "an offense that occurred in the officer's primary jurisdiction." 725 ILCS 5/107-4(a-3). While conducting such an investigation, the police officer can make arrests for violations of state law if he or she "becomes aware of the immediate commission of a felony or misdemeanor violation" of state law. *Id.* These provisions provided the state law authority for Defendant to arrest Plaintiff for the felony charges and the misdemeanor charge of driving without a valid driver's license.

## V. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [26] is granted.

Dated: March 31, 2009

Robert M. Dow, Jr.
United States District Judge